Thank you. Our next case is In Re Rogers. Mr. Hennemann? LARRY HENNEMANN Good afternoon. I'm Larry Hennemann. I'm an attorney for Appellant Rogers et al. There's one point that I want to make today that I think should resolve this entire appeal. And that point is that the combination of the two primary references, Nardella and Schaefer, suggested by the Patent Office, just makes no sense whatsoever. It yields an unworkable, inoperable device. JUSTICE SCALIA Doesn't your claimed invention just flip Nardella upside down, operate it in reverse order? Is that a fair characterization? Instead of squeezing out the bottom, you are squeezing at the top. HENNEMANN I don't see that, I don't see that, Your Honor. Respectfully, I don't see that. In developing this invention, JUSTICE SCALIA Tell me what, maybe you can tell us what provides you and what is the inventive feature, which is nowhere found in the prior art and which one of skill in the art would not do in any easier routine fashion, knowing the prior art. HENNEMANN There are several inventive features that come together to meet the ultimate objective of eliminating plumbing and being able to carry out the entire fermentation process and pressing process in a single smooth-walled container. We think the most important of those was the perforated press plate, and so that's why the perforated press plate was moved into Claim 1, or I'm sorry, into Claim 36 when we discovered the Nardella reference. So the problem with the combination is that Nardella has a lid that is supposed to, there's two problems really. The first one is that Nardella has a lid that's supposed to keep the contents under pressure during fermentation, and if you substitute a perforated press plate for that lid, then there's no way that you can maintain pressure on the wine, you can't protect the wine from the atmosphere, it just yields an unworkable device. The second problem is when you, in Nardella, they gravity drain the wine out of the tank, and after the majority of the wine is gravity drained out of the tank, then they compress the residue that's left with the solid press plate. If you used a perforated press plate and squeezed all the solid material down against the drains, you'd occlude the drains so that the wine would not flow out of the tank. Now we've, in the briefs, we've went back and forth about clogging, that we didn't argue about clogging, but essentially what we're doing is if you use a perforated press plate in Nardella, then you are separating the wine from the exit route. You are, you can... You're focusing on, I think KSR says don't focus on it. You're saying, well, if you take the press plate from Schaefer and stick it in Nardella, it's not going to work right. And what KSR said was, rather you look at, if I took these two things together, would I result in the claimed invention? Not would I take one element out of one thing and insert one element for another and have it operate perfectly, but could a skilled artisan take these two separate things and find a way to put them together to make them work? And that is the question. Is that obvious? And so, of course, I mean, very seldom is it the case that you take one thing out and put something else in and it works perfectly. Well, I'm not suggesting that you take the precise press plate out of Schaefer and put it in Nardella. It's the central function of the press plate we're talking about. And KSR... But the central function of your press plate isn't claimed. Claim 36 says you can talk about maintaining pressure, which you were just saying is one of the key distinctions, which is why the Nardella thing wouldn't work with the press plate. That's not part of at least some of the claims. The longest claims don't include... What we're talking about here is the establishment of the prima facie case of obviousness against our claims, which requires some logical rational reasoning why someone skilled in the art would have done this. Prior to KSR, it was very clear, based on the precedent from this court, we needed to find all the elements in the prior art, we needed to find a teaching suggestion or motivation in the prior art to combine those references, and we needed a reasonable expectation of success. KSR has changed that little, if at all. KSR still says that we need to provide a reasonable explanation as to how the skilled artisan would have made the modification. So we're not really as much talking about the breadth of our claims as we are why would someone skilled in the art take a perforated press plate and put it into a tank like Nardella with drains at the bottom and clog their drains up and expose their wine to the oxygen atmosphere and basically frustrate the primary purpose of Nardella, which is to keep that wine under pressure during fermentation. So we've hit... Now Schaefer teaches us that we can have... It sounds to me like the only thing that you're maintaining as your inventive feature is perforations on the top instead of the bottom. But Schaefer has perforations on the sides of the tank and I think also some on the top as well. Why wouldn't Schaefer teach you? You can put those perforations wherever they were. Well, first of all, Schaefer's not a fermentation tank. Schaefer's a fruit press. I understand that. But Schaefer is fermenting things and using the perforations on the side and top of the tank. So now you've got Nardella and you look at it and say, well, why can't we put, like Schaefer, the perforations on top as well as on the bottom? I think that respectfully, the question isn't why can't we do it? The question is why would we do it? Would one of skill in the art see this as a kind of routine, easy step to take? I think they would see it as something that would ruin the press of Nardella and render it inoperable. Why? Because it would push the wine. First of all, it would expose the wine to the atmosphere, it would frustrate the primary purpose of Nardella, which is to maintain the grapes and the wine under pressure during fermentation. And second of all, it would create a headache of how do you get the wine out of the wine vat now? I mean, there's no easy solution to that problem. Our inventors struggled to figure out. You can't just suck it out with a pump. You can't expose the food product to the internal workings of a pump. You essentially create a problem and there's no benefit. There's no reason to create that problem. It's sort of like the Omeprazole cases. It's a solution without a problem. Why do it? The only points or the only explanation offered by the examiner and by the board are that it would permit the free expression of juice in every direction. But that's not an advantage in every device. In some devices, you don't want the juice expressed freely in every direction. Can't you just pump the wine out of Nardella? If there was a perforated press plate on the top, would you just pump the wine out? And that would be the claimed invention, wouldn't it? That's right. That's right. But why would you do that when Nardella already is perfectly set up to gravity feed the wine out of the tank? The problem I have is that in establishing a prima facie case of obviousness, there's supposed to be a rational explanation that would lead someone skilled in the art to make this invention. It's not why couldn't they make it? Otherwise, every invention, of course every invention could be made. If that were the test, no invention would be patentable because you can obviously make everything that someone has already made. So here what's lacking is some reasonable explanation as to why someone with the press of Nardella would have said, hey, let's put a perforated press plate in here. Why would we do that? It's going to push the wine above the plate. Now we've got another problem. How do we get that wine out? It's going to expose the wine to the atmosphere during the fermentation process. It can't maintain pressure on the grapes, which Nardella says was the primary purpose. It seems to me that what the office has done is taken the elements and rather than looking at the invention as a whole and saying, why would we put this press plate into the device of Nardella, they look at the features of the press plate without regard to whether it's an advantage or disadvantage in Nardella and simply combine them by reciting the function of the press plate in the press of Schaefer. I'd like to reserve the rest of my time. Thank you, Mr. Henneman. Mr. Krause. May it please the court. This is indeed the quintessential case described in KSR. This is a simple substitution of one element, a combination of familiar elements according to known methods that does no more than yield predictable results. What would the substitution be? The solid plate in Nardella for the press plate or the perforated plate? The perforated plate in Schaefer put into the, replacing the solid plate of Nardella. Then wouldn't all the wine push right up into the winding mechanism and everything I'm looking at in the picture? I mean, it certainly doesn't seem like that would be a very good way to have it operate at all. Why would one of skill in the art ever want to make that? This is a method patent and obviously there are different ways of pushing a lid down against the fruit. And so there certainly would be an extension. There could be something similar to what Rogers themselves use. So it's, you know, maybe it wouldn't go, maybe there wouldn't be a winding mechanism as such. But there's no question that we have the perforation and you're right, the perforated plate would press against the grapes and some fluid would come up. But then that yields the advantage discussed by the examiner that now you've allowed the Possibly exposing wine to the atmosphere? Possibly exposing wine to the atmosphere. There's no, the very teaching of Rogers involves exposing wine to the atmosphere. It was only in the reply brief that I saw this argument that you wouldn't want to expose fermenting wine to the air. I, you know, my only response to that is I tried to Google it. You can Google it yourself. You'll find numerous references to ways of fermenting wine in open tanks. And sometimes the oxygen is an advantage. So that's not, that's not a detriment here, if it were, Rogers invention would be thrown into question. You know what's troubling about this case? As you, as you look at it, as you look, I mean, the art of winemaking goes back, I don't know, hundreds, thousands of years with a lot at stake, people looking very carefully for ways, even very small ways that might make a difference, a small difference. Here, it does look to me as if the change is small. It isn't exact. You can't just take this from here and this from there and put them together. You have to do some adaptation, some changes, and you get an improvement. It's a small one, not previously made in this art. Where does one draw the line? There's nothing to show that this should be done and will provide something better or something different. And it's just, you can fight it once you see what, what Rogers has done. It's easy enough to recreate by putting a few things together, but why, in fact, should there not be significant weight, significant enough for the patent office to recognize that there is some improvement achieved in the, in the handling of the grapes perhaps or in the degree of wine, of juice, which is extracted in the insulation from the atmosphere, such that it's advantageous? Yes, I don't mean to suggest the patent office does not recognize that advantage. But as you say, this is a small improvement and not every improvement yields a patent. And in this case, we did follow even the pre-KSR teaching suggestion motivation test. The examiner found a motivation in Schaefer, which says it's an advantage to be able to express the juice in every single direction. If you've got the solid plate pressing down on the contents of the tank, you can kind of see that, well, maybe the wine is pressing back up and you're not getting as much squeezing as you might otherwise get. If you put holes in that, as suggested by Schaefer, you're going to be able to squeeze more, you'll compress more, and then you can get the benefit that the wine can be removed off of the top as well as through the bottom. You said pre-KSR TSM test. That's a post-KSR test too, isn't it? It is post and pre. Yes, thank you. Exactly. Excuse me. As I understand their argument, though, you can't put a perforated plate in Nardella and have a sensible working invention. No one would do that. It wouldn't work properly. I beg to differ. That is Rogers' invention. The dispute we have, and I don't think it's necessary to resolve this, is whether or not Nardella maintains its grapes under pressure, whether that statement in Nardella means that the whole fermentation process is pressurized. We didn't think it did because Nardella speaks of a generally circular lid and a generally circular barrel. We thought that there's no seals or anything like that. We thought that any pressure would be relieved through those sides, but that's almost ... I've lost my train. Did that answer your question, or is there ... Maybe you better ask it again. No, I'm just a little troubled by the idea of sticking a perforated plate in Nardella, and you have the handle on the top and everything, and I just don't see a skilled artisan having any inclination to do that. It wouldn't be a sensible working device. Further modification would certainly be necessary for Nardella to be really useful, working, sanitary because of the handle and everything, and none of those further modifications are anywhere disclosed or cited by the PTO. That is correct. That wasn't ... The further modifications of that sort were not argued. As Your Honor suggested when questioning Mr. Henneman, certainly KSR contemplated that changes like that are within the ordinary skill of the art. You can simply imagine that there might have been some extension which would have pushed the perforated press plate down. There's no prohibition in the wine area that as long as one maintains sanitary surfaces, there wouldn't be an adverse impact on the wine. Would a lot of skill in the art be motivated to do that press plate because Nardella also stresses the importance of maintaining this wine under pressure, which is why it has solid and not perforated press plates. Well, that goes to my second point. I don't think Nardella requires wine being under pressure. Nardella merely speaks of the grapes being under pressure. Yes, the solid lid is on top of the fluid, but it's very unclear how far that lid is pushed down, whether a gas pocket forms or, as we suggest, whether the gas or the liquid would go out the sides as soon as you press down too hard. But the bottom line is that's not a necessary feature of Nardella. In fact, Nardella's main teaching has to do with the cross dividers. Nardella is mainly about a pulp removal assembly. And so, yes, incidentally it talks about maintaining the grapes under pressure, but that's not a necessary feature as long as I can show you and I have the Sieben reference, A339. It's not unknown to ferment wine at atmospheric pressure. In fact, it's quite common. So even if that's an important, even if that is what Nardella means, the fact that that feature goes away when you use a perforated press plate doesn't mean you wouldn't use the perforated press plate to get the advantages shown at Schaefer. What about the dependent claims, 49, 57, 59? Yes, there are many dependent claims, and there are arguments as to each one I'm prepared to talk about. Why don't you hit the quenching one quickly, the 49? The clogging the drains one, or which one? That's cooling by quenching. Oh, cooling by quenching. Okay, well, that's taught by the combination of Sieben and Gettleman. Sieben talks about the need to control fermentation rate by cooling in the wine environment, and Gettleman teaches the age-old concept of immersing a container in a water bath in order to cool it. And the examiner looked at those two references and said, well, that is enough to somebody with skill in the art to render the idea of putting the fermentation tank in a bath obvious. What about the continuously formed sidewalk? I've read the reply brief, and I, again, stand by my position in the red brief, that the argument that the specification yields a special definition of the term continuously formed did not appear in the brief to the Board. If you look at the appeal brief, continuously formed shows up at 8.254, 8.256, and 8.264. Those first two references are simply description of the figures of the invention, and on 8.264, when they're arguing against the continuously formed limitation in Claim 59, they only cite to the Schaeffer. Of course, Schaeffer— No, but the header. Right before the site, the header says, Nardella and Schaeffer failed to teach all elements of Claim 59, or something thereabout. And then you're right, the next sentence is about Schaeffer, but the line appearing before it could easily be interpreted as an argument that neither one discloses. And I don't completely—I don't disagree with that. What I'm mainly disagreeing with is the idea of looking back to the specification for the definition of continuously formed. The Board saw the argument and said, gee, Nardella looks continuously formed to us. It also said Schaeffer itself teaches use of a perforated container. That would be continuously formed also to meet that limitation. The Board did not have the benefit of the argument that has now been made that the specification somehow teaches a nonstandard meaning of continuously formed, and that's why the Board didn't address it. Is Nardella's tank continuously formed? I don't think so in the common usage of that. I'm sorry. Take that back. I do think so in the common usage of the term continuously formed, the way the Board used it. You know, it's not discontinuous the way Schaeffer obviously is with the open slots. So that's the way the Board looked at that. Anything further, Mr. Krauss? I have nothing further. Thank you for your attention. Thank you. Mr. Haneman, you have a little over five minutes remaining. Thank you. I'd like to briefly touch on some of the issues that were just raised. Regarding the continuously formed limitation, as I mentioned before, that's at the heart of the invention, probably the second most important feature, because that eliminates plumbing where bacteria and contaminants can hide and allows the whole process to be done in a smooth, continuously formed walled container. That was raised in our prior arguments. It was not only raised in the last brief. And the specification makes it clear that that's what it means. It talks about eliminating plumbing fixtures, and it says, continuously formed, open parentheses, for example, no plumbing fixtures. So any assertion that our specification didn't make that clear just is not correct. The second thing I wanted to talk about was the primary purpose of Nardella. Nardella actually had two purposes. I don't think it's fair to say that maintaining grapes under pressure during fermentation wasn't one of those purposes. Nardella says this invention provides a means for maintaining the crushed grapes under pressure during fermentation and a means for removing the compacted pulp after drawing off the liquid. But that's not quite the right question. The question is, would one of skill in the art, recognizing that you could just flip Nardella over, recognize that you could also ferment in the open atmosphere? Well, it's not just the open atmosphere. It's maintaining the pressure. Even if you accept the argument that— No, no, the point is they're abandoning the pressure point. They're saying, you know, we see an advantage in this Nardella, but let's flip it over. Would there be anything to defeat that? And you say, yes, there's no pressure. And their response would be, oh, we don't need pressure to ferment. We'll do just fine. Well, I still don't understand the proposed modification. If you just invert Nardella— Wouldn't one of skill in the art think it's—say, hey, I could do this just as well by turning Nardella upside down, an easy modification. I don't even need to combine any references. I'm making an obvious modification of an existing reference. I'm flipping it upside down. Your response is, well, but it's not under pressure. You're exposing it to the open air. The answer is, well, one of skill in the art would say that's irrelevant. I can do my fermentation without pressure. My response is, at first, I don't understand how it would work, flipping it upside down. I certainly haven't seen anything in the prior art that would suggest some sort of inverted tank. So I really don't know how to respond to that. I think you need to respond to it because the question is, would one of skill in the art think that is an obvious way to proceed, and why not? Because I can't even figure out how it would work. The last thing I wanted to say— The patent office evidently thought it would work. To flip it upside down. That's what they held up. So you're just disagreeing with them on a factual point where we have to defer to them on the facts. I'm not disagreeing with them on a factual point. My point is that they have not provided any rational basis for making any such modification to the prior art. KSR itself warned against this and told us that there needed to be an explicit rational basis or explicit line of reasoning that would have led someone skilled in the art to make the modification. The question isn't can someone do this with hindsight, reasoning, but it's what is it that would have led someone skilled in the art to do this in the first place. I have clients that come into my office every day. I'm primarily a patent prosecutor. Some of these clients take money out of their family budgets to apply for their patent application and prosecute their patent application. Some take mortgages on their house. If the patent office can just take a collection of prior art references to reconstruct your claim elements from various prior art references and combine them with no motivation for doing so, then there's no objective test for obviousness. And I can't tell my clients when they come in whether they're wasting their money or not. Thank you. Okay. Thank you, Mr. Henneman.